March 22, 1909.

———o———

(Court of Appeal, Parish of Orleans.)

## T. ALLEN DOUGLAS VS. WALTER H. McCHESNEY.

1.  The creditor cannot, in case of failure of payment, dispose of the pledge, by sale or otherwise, before having obtained a judgment in the ordinary course of law, though it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged in such manner as may be agreed upon by the parties, without the intervention of courts. 3165 C. C.
2.  Where the pledger has not given his consent to the sale or transfer or other disposition of the property pledged, the pledgee who has so disposed of the pledged property will be held liable for the property or its value.

Appeal from the Civil District Court, Division "B."

R. J. Perkins, for Plaintiff and Appellee.

Carroll, Henderson & Carroll, for Defendant and Appellant.

ESTOPINAL, J.   Plaintiff sued to recover of defendant the sum of fifteen hundred and thirty dollars ($1,530.00), averring that on or about April 30th, 1906, he borrowed one hundred and fifty dollars ($150.00) from the defendant, and that as he was leaving New Orleans for an indefinite time he offered to include in a promissory note an amount equal to one year's interest, at eight per cent, on the amount borrowed; that he gave to the defendant his note for one hundred and sixty-two dollars ($162.00) made payable "Thirty . . . . after date," that he gave defendant, as collateral security, two diamond studs and a note, dated June 20th, 1904, for one thousand two hundred and forty dollars ($1,240.00), signed by Mrs. Blanch

—260—

D. Leathers and Captain B. S. Leathers, jointly, and to author-ize his wife, said note being payable one year after date.

Plaintiff then avers that in January, 1907, "before the lapse of the period for which interest had been paid on the loan of one hundred and fifty dollars ($150.00) made him by defen-dant, defendant sold his collateral security; that prior to April 30th, 1907, plaintiff wrote defendant stating he intended to take up his note and to receive the collateral securities before the year had elapsed. Plaintiff then avers that he tendered defen-dant one hundred and sixty-two dollars ($162.00) in due time, but defendant informed him that he had disposed of the securi-ties and could not return them. Plaintiff avers that the not? signed by Mrs. B. D. Leathers and her husband was and is still worth its face value, and its payment could have been enforced.

The prayer of plaintiff's petition is for judgment against defendant condemning him to return to him (plaintiff) the diamond studs and the collateral note already referred to and held by defendant in pledge, or in default, that defendant be condemned to pay the value of said diamond studs and the amount of the Leathers' note with interest.

First tendering the general issue, defendant answers that about April 28th, 1906, he discounted plaintiff's note for one hundred and sixty-two dollars ($162.00), paying him one hun-dred and fifty dollars ($150.00) thereof, the note being dated April 30th, 1906, made payable thirty days after date; that to secure payment of said note, plaintiff pledged and delivered to him (defendant) two diamond studs and a past due promis-sory note dated June 20th, 1904, payable one year after date with interest at the rate of eight per cent, signed by Mrs. Blanch D. Leathers and her husband, B. S. Leathers, jointly, to authorize his wife; that said Mrs. Blanch D. Leathers is a sister to plaintiff, and that she resides with her husband in this city; that the note of one hundred and sixty-two dollars ($162.00) matured and became payable on May 30th, 1906, but was not paid; defendant avers that after waiting several months without hearing from plaintiff he tried to locate his whereabouts, and made inquiry of B. S. Leathers, stating to the latter that he wished payment of the note of one hundred and sixty-two dollars ($162.00), telling Leathers specially about the collat-eral note, but he failed to locate plaintiff or open communication with him.

Defendant then avers that after waiting several months, he wrote to Mrs. Leathers requesting her to make payment or settlement of said note; that subsequently, B. S. Leathers, acting for Mrs. Leathers or himself, or both, paid one hundred dollars ($100.00) on account, and afterwards sixty-two dollars ($62.00) in full settlement of said note of one hundred and sixty-two dollars ($162.00); that thereupon he turned over to said Leathers (for himself, his wife or both), a note for one hundred and sixty-two dollars ($162.00) with the collateral security; that the collateral note has not been paid or extinguished; that the plaintiff has and retains all his rights against the makers of said note; that B. S. Leathers, or his wife, or both, hold said collaterals for the plaintiff subject to such rights as they may have against plaintiff by reason of having plaid plaintiff's note of one hundred and sixty-two dollars ($162.00); that plaintiff may, by suit or otherwise, enforce the payment of the collateral and the return of the studs, and that the action against defendant is neither just nor well founded.

The judgment of the district court was in favor of plaintiff, decreeing that defendant return to plaintiff the collateral note and diamond studs.

From this judgment the defendant has appealed.

Douglas (plaintiff) borrowed of the defendant one hundred and fifty dollars. ($150.00) to secure payment of which he gave the latter his promissory note of one hundred and sixty-two dollars ($162.00) as collateral security; attached a promissory note for one thousand two hundred and forty dollars ($1,240.00), drawn by Mrs. B. S. Leathers and her husband, Captain B. S. Leathers, and two diamond studs. When plaintiff's note for one hundred and sixty-two dollars ($162.00) fell due or some time afterwards, defendant made every effort to locate plaintiff in order that he might secure a settlement of said note but without avail. He thereupon sold the note of one hundred and sixty-two dollars ($162.00) to Mrs. Leathers or her husband, and turned over to them the collateral note of one thousand two hundred and forty dollars ($1,240.00), of which they, the Leathers, were the makers, and the two diamond studs.

In our opinion the transfer of the colltaeral without the consent or knowledge of plaintiff is one sanctioned neither by statute nor jurisprudence.

Article 3165 C. C., as amended by Act No. 9 of the Legislature of 1872, recites:

"The creditor cannot, in case of failure of payment, dispose of the pledge, but when there have been pledges of stocks, bonds or other property for the payment of any debt or other obligation, it shall be necessary, before such stock, bonds or other property so pledged shall be sold for the payment of the debt for which such pledge was made that the holder of such pledge be compelled to obtain judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases." Continuing, the Article provides "that it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged without intervention of the Courts."

In the case at bar this authority is not shown, nor is it pretended that any was given.

The point made by the defendant that there was no sale of the collateral note and that hence, the transfer or delivery of either or both plaintiff's note and collateral carried the actual rights belonging to the holder and no more, i. e., Mr. and Mrs. Leathers did not acquire, as to either note, any greater rights than were held and enjoyed by the defendant (McChesney).

To countenance and give force to such a doctrine would be to fly in the face of a principle of law founded on absolutely sound reason.

Suppose the collateral given to secure the debt had been a diamond or a number of diamonds of the value of one thousand four hundred dollars ($1,400.00) instead of a note, and the pledgee, without notice or consent of the owner and pledger had either *sold* or *transferred* the diamonds to a third person, can it be seriously contended that the owner's action would not necessarily be against the pledgee for the return of the property, and in the alternative, for the value thereof? We think not.

In Mrs. M. A. Laloire et als vs. P. S. Wiltz & Company the facts, very similar to those in the present case, were as follows:

The plaintiff, Mrs. Laloire, being indebted to defendants in the sum of two thousand, seven hundred and twenty-four dollars ($2,724.00), with eight per cent interest from April 20th, 1873, gave to them in pledge a note of F. Bernard for

—263—

four thousand dollars ($4,000.00) bearing eight per cent interest from the 30th day of December, 1872, and due the 1st of December, 1873. The act of pledge bears date of April, 1873.

The defendants being in need of money, in their turn pledged this four thousand dollars ($4,000.00) note to the New Orleans Mutual Insurance Association to secure a loan of twelve thousand ($12,000.00) dollars, without having advised the company of the nature of their title or limiting their pledge of it to the amount of their debt against plaintiffs. P. S. Wiltz & Company (defendants), soon after failed, and the Insurance Company disposed of the mortgage note and the last purchaser foreclosed the mortgage and bought the plaintation.

"Plaintiff brings suit against P. S. Wiltz & Company to recover the excess of the pledged note over the amount of her indebtedness.

"Defendants answer by a general denial, and plead that plaintiff has not put them in default; that plaintiff has never paid or offered to pay her indebtedness to them; that they had a right to pledge the four thousand dollar note and did so in good faith."

Says the Court: "Conceding for the sake of argument that defendants had a right to pledge the note held by them in pledge, they certainly had no right to pledge a greater interest therein than they had themselves. By their pledge to the Insurance Company *they put it out of the power of* themselves or plaintiff to redeem the note by paying the two thousand seven hundred and twenty-four dollars ($2,724.00), for which it was pledged to defendants. The defendants actively violated the contract of pledge, and there was no necessity of putting them in default.

"The defendants having disposed of the pledge in violation of their contract, cannot avoid liability for its amount by indefinite statements of witnesses that the property mortgaged and sold to pay the note did not bring the amount of it. The maker of the note may be perfectly responsible outside of the mortgaged property, and defendants have put it out of their power to return the note pledged.

If the note pledged was not worth what it called for, the onus of proving it was on defendants. We find no proof of that fact at all satisfactory."

Clearly under the law and jurisprudence, in the absence of special authority by the pledger to the pledgee authorizing the latter of dispose of the pledged property in any way, the pledgee cannot part with the property, and can only sell or dispose of same in the manner pointed out by Article 3165 of the Civil Code.

The judgment appealed from is correct and must be affirmed.

April 7, 1909.

Rehearing refused May 3, 1909.

Writ refused by Supreme Court June 8, 1909.